**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-01643-TWP-DML |
| | ) | |
| GLOBAL CARAVAN TECHNOLOGIES, INC., | ) | |
| C.H. DOUGLAS & GRAY, LLC, | ) | |
| RED WING CAPITAL, LLC, | ) | |
| CHRISTOPHER DOUGLAS, HUSHENG DING, | ) | |
| CHRIS TZENG, KYLE FANG, THOMAS | ) | |
| GRAY, DORIS ROBERTS, and CHARLES | ) | |
| HOEFER, JR, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross partial motions for summary judgment.  On January 1, 2015, Plaintiff, the Cincinnati Insurance Company ("Cincinnati"), filed an Amended Complaint for Declaratory Judgment.  (Filing No. 48.) On February 13, 2015, the Defendants filed an Answer and Counterclaim.  (Filing No. 52.)

 Cincinnati seeks a declaration of its rights and legal obligations arising from a contract of insurance entered into between it and Defendant Global Caravan Technologies, Inc., ("GCT"), and a determination of whether an insurance policy issued by Cincinnati to GCT requires Cincinnati to defend and indemnify the Defendants in a pending state court action.

On September 17, 2015, the Defendants filed a Motion for Partial Summary Judgment. (Filing No. 74.)  Cincinnati filed an Amended Response (Filing No. 80) and a Cross Motion for Partial Summary Judgment (Filing No. 81) on October 22, 2015.

For the reasons stated below, the Court concludes that the policy does not require defense. Accordingly, the Court **GRANTS** Cincinnati's Motion for Partial Summary Judgment and **DENIES** the Defendants' Motion for Partial Summary Judgment.

## I.  BACKGROUND

In large part, the facts are not disputed by the parties.  Where there is a dispute, however, the Court has indicated as such in the following recitation.

### A.    State Court Lawsuit

Underlying this declaratory action is a state court lawsuit arising out of a failed business relationship.  In 2012, Charles Hoefer ("Hoefer") and several of the individual Defendants engaged in discussions to create GCT, a business that was intended to create and implement new technologies for the manufacturing of recreational vehicles.  (Filing No. 76 at 6-7.)  On January 17, 2013, GCT was formed.  *Id.*

Defendants Husheng Ding ("Ding") and Christopher Douglas ("Douglas") are investors in GCT.  *Id.*  In addition, Ding and Douglas are also officers and directors of GCT, serving as President and Interim Chief Executive Officer, respectively.  *Id.*  Ding and Douglas are also principals in Defendant Red Wing Capital, which is a shareholder of GCT.  *Id.*  Defendant Kyle Fang ("Fang") is also an investor and director of GCT.  *Id.*  Before the business relationship soured, Hoefer served as Chairman and CEO of GCT.  *Id.*

Hoefer alleges that, shortly after GCT was formed, Ding began seeking investment deals in China, making it difficult to meet deadlines for new products and straining the relationships within the company.  (Filing No. 48-2 at 13-15; Filing No. 48-3 at 7, 20-24, 28.)  As a result, Hoefer alleges that Defendants Ding, Douglas, and Fang began conspiring to remove Hoefer from GCT.  (Filing No. 48-2 at 15-16; Filing No. 48-3 at 27, 29.)

In March 2014, GCT launched a new product, the CR-1 Carbon prototype. (Filing No. 48-2 at 13, 19; Filing No. 48-3 at 7, 33; Filing No. 76 at 6-7.) Leading up to the launch date, Hoefer alleges that Ding deliberately thwarted his efforts to keep production running smoothly, in order to make Fang believe that Hoefer was "underperforming". (Filing No. 48-2 at 20-21; Filing No. 48-3 at.)

After the launch date, which Hoefer contends was a resounding success, Hoefer alleges that Ding, Douglas, and Fang indicated their intentions to shift their investments away from GCT and the production of RVs and instead focus on more lucrative deals in China. (Filing No. 48-2 at 22-24; Filing No. 48-3 at 32-36, 41.) In addition, though the details are not entirely clear from either the Complaint or the Amended Complaint, Hoefer alleges that Ding, Douglas, and Fang had an illicit purpose of securing land in China through GCT. *Id.*

Thereafter, the relationship between Hoefer and his business partners continued to sour. Ultimately, on April 21, 2014, Hoefer alleges that Defendants Ding, Douglas, and Fang held a special board meeting, wherein the Defendants passed "frivolous and unconventional [b]ylaws" and voted to remove Hoefer from GCT. (Filing No. 48-2 at 32; Filing No. 48-3 at 24, 40-41.) As a result, on May 1, 2014, Hoefer filed a lawsuit against his former business partners in the Marion Superior Court. (Filing No. 48-2.)

On May 14, 2014, the Defendants named in Hoefer's Complaint, and GCT, requested that Cincinnati provide defense and indemnification under GCT's commercial general liability plan. (Filing No. 76 at 93.) On July 7, 2014, GCT moved to intervene in the state court action. (Filing No. 80 at 5.) On September 26, 2014, Cincinnati offered to provide a defense with a full reservation of rights, noting that GCT had not been named as a Defendant. (Filing No. 76 at 150-51.) Sometime later, the state court granted GCT's motion to intervene. (Filing No. 80 at 5.)

On September 30, 2014, Hoefer filed an Amended Complaint in the Marion Superior Court.  (Filing No. 48-3).  Therein, Hoefer summarized the Defendants' actions as follows:

> The Complaint brought before this Court involves a sophisticated and organized fraud scheme perpetrated against the Plaintiff by the Defendants, in which the Defendants represented themselves as securities experts and financial representatives and acted as the Plaintiff's advisors and persons in a position of confidence and trust, but were conspiring to defraud the Plaintiff of his economic rights and steal his technology and intellectual property for their own selfish purposes in a scheme of personal enrichment for China riches.

*Id*. at 2.

In the Amended Complaint, Hoefer alleges, among other things, that Ding, Douglas and Fang publically defamed his personal and business reputation.  (Filing No. 48-3 at 50-51.)   For instance, Hoefer alleges the following:

> [T]he Defendants' efforts to oust the Plaintiff from GCT included disparagements and character assassinations directed to GCT's employees, attorneys, investors, partners, and other individuals.  These defamations were professionally brutal, falsely alleging that the Plaintiff had stolen intellectual property, and that the Plaintiff was a liar.  Evidence that these defamations took place while the Plaintiff was CEO of GCT come from Purdue University's Director of Motorsports Danny White, who left the Plaintiff a voicemail after talking with Ding in mid-April 2014, calling him a con-man.  . . . GCT's intellectual property attorney also told the Plaintiff that Douglas and Ding had fully informed him of the Plaintiff's 'theft' through the month of April 2014.

*Id*. at 40.  Further, Hoefer also alleges:

> [T]he Defendants publically humiliated the Plaintiff by issuing through GCT a public and severely defamatory statement against the Plaintiff after kicking him to the curb, calling the Plaintiff "dangerous" and "irrational" in major RV industry media such as RV Business, RV-Pro, and RV Daily Report, and also in the Indianapolis Business Journal.

*Id*. at 41.  In particular, Hoefer notes Ding's published response to his state court lawsuit, in which Ding remarked, "[Hoefer's] lawsuit, which reads as sensationalistic, defamatory, and error-ridden, demonstrates the same emotional, irrational and dangerous behavior that led to his necessary separation from the company."  (Filing No. 80-1 at 309.)

4

On October 8, 2014, Cincinnati filed this declaratory judgment action.  (Filing No. 1.) Thereafter, on October 29, 2014, Cincinnati again offered to provide a defense with conditions to the named state court Defendants; but the named state court Defendants again rejected this second offer.  (Filing No. 82 at 10.)  On January 16, 2015, Cincinnati filed an Amended Complaint for Declaratory Judgment, addressing both Hoefer's Amended Complaint and GCT's voluntary intervention.  (Filing No. 48.)

As of May 31, 2015, the named Defendants had incurred $40,728.46 in fees and expenses to Delk McNally, LLP and an additional $89,378.01 in fees and expenses to Ice Miller, LLP. (Filing No. 75 at 12.)

**B.**     **Applicable Contract Provisions**

The parties agree on the relevant coverage and exclusion provisions but differ on their interpretation and application in this case.

**1.**     **"Personal and Advertising Injury" Coverage**

The policy defines the scope of coverage, as follows,

**SECTION I – COVERAGES**
. . .
**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
. . .
**b.**  This insurance applies to "personal and advertising injury" only if:
**(1)**  The "personal and advertising injury" is caused by an offense arising out of your business; . . .

(Filing No. 1-2 at 22.)

The policy defines the following persons as "insureds" under the plan as follows,

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:
. . .
**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
. . .
**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

(Filing No. 1-2 at 26-27.)

Further, the policy offers the following relevant definitions.

**SECTION V - DEFINITIONS**
. . .
**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.
. . .
**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
. . .
**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .

(Filing No. 1-2 at 31-32, 34.)

**2. "Employment Related Practices" Exclusion**

Finally, the policy includes the following relevant exclusion.

**SECTION I – COVERAGES**

. . .

**COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY**

. . .

**3.  Exclusions**

This insurance does not apply to:

. . .

**m.  Employment Related Practices**

"Personal and advertising injury" to:

**(1)**  A person arising out of any:

. . .

**(b)**  Termination of that person's employment; or

**(c)**  Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . .

(Filing No. 1-2 at 22-24.)

## II.  <u>LEGAL STANDARD</u>

Summary judgment is only appropriate by the terms of Federal Rule of Civil Procedure 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.  *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made."

*O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

A court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

## III. DISCUSSION

As an initial matter, the Court notes that the issue of indemnification was previously stayed. (*See* Filing No. 39.) Accordingly, the Court does not make any conclusions regarding that issue in this Entry.

## A. Applicable Law

Both sides agree that Indiana contract principles apply to this contract interpretation dispute. Under Indiana law, the interpretation of an insurance policy presents a question of law to be decided by the court. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)); *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co.* ("*Jim Barna*"), 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) ("The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate"). The insured bears the initial burden of showing that its claim is covered

by the policy. *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 594 (Ind. Ct. App. 1982). Thereafter, the burden shifts to the insurer to prove that an exclusion applies. *Mut. Hosp. Ins., Inc. v. Hagner*, 475 N.E.2d 32, 34 (Ind. Ct. App.1984).

"Clear and unambiguous policy language is given its ordinary meaning in order to accomplish the primary goal of contract interpretation of determining the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." *Selective Ins. Co. of S. Carolina v. Erie Ins. Exch.*, 14 N.E.3d 105, 111 (Ind. Ct. App. 2014). However, where there is ambiguity, insurance policies are to be construed strictly against the insurer. *Jim Barna*, 791 N.E.2d at 823.

Nevertheless, "[a] policy term is not ambiguous simply because a controversy exists, and one party asserts an interpretation contrary to that asserted by the opposing part". *Short v. N. Pointe Ins. Co.*, No. 1:11-cv-00545-SEB-MJD, 2013 WL 1828024, *7 (S.D. Ind. Apr. 29, 2013) (citing *Bedwell v. Sagamore Ins. Co.*, 753 N.E.2d 775, 779 (Ind. Ct. App. 2001)). Instead, a contract is only ambiguous "when it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning." *Id.*

Finally, under Indiana law:

An insurer's duty to defend its insured is broader than its duty to indemnify. We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. If it is revealed that a claim is clearly excluded under the policy, then no defense is required.

*Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) (internal citations omitted).

## B.    <u>**"Personal and Advertising Injury" Coverage**</u>

Both parties agree that the defamatory conduct identified in Hoefer's Amended Complaint constitutes a "personal and advertising injury". (*See, e.g.*, <u>Filing No. 80 at 19</u>) ("[t]here is no

dispute that, if proven, Hoefer's defamation claims potentially involve 'personal and advertising injury' caused by one of the enumerated offenses, here defamation, . . . under Coverage B of the [insurance contract]").

However, Cincinnati argues that the factual allegations in Hoefer's Amended Complaint did not "arise out of GCT's business". In so arguing, Cincinnati attempts to deny coverage under the insurance policy under Section I.B.1.b. (*See* Filing No. 1-2 at 22) ("[t]his insurance applies to 'personal and advertising injury' only if: [t]he 'personal and advertising injury' is caused by an offense arising out of your business") (internal numbering omitted.) In support of this argument, Cincinnati notes that Hoefer's Amended Complaint discusses the conduct of the named state court Defendants as "conspirators" rather than as "executive officers", "shareholders", or "employees". In addition, Cincinnati notes that Hoefer did not name GCT as a defendant in either of his Complaints.

Somewhat puzzling, however, when discussing the "Employment Related Practices" exclusion at other points in its briefing, Cincinnati repeatedly argues that the alleged defamation *does* "arise out of the employment" relationship. (*See, e.g.*, Filing No. 80 at 25 ("the defamation at issue arises out of the employment"); *Id.* at 26 ("[t]he May 9, 2014, RV D@ily Report clearly shows that Ding's allegedly defamatory statement relates to and arises out of Hoefer's GCT employment and termination"); Filing No. 82 at 33 ("the injury to Hoefer's professional reputation ('personal and advertising injury') also arose out of his termination of employment with GCT because the alleged defamatory public statement provided the reason for his termination").)

Cincinnati cannot have it both ways, and this Court agrees with Cincinnati's latter conclusion rather than its former one. As Cincinnati concedes, Hoefer's defamation allegations fit squarely within the policy's definition of "personal and advertising injury". (*See* Filing No. 1-

2 at 31-32, 34) ("'[p]ersonal and advertising injury' means injury, including consequential 'bodily

injury', arising out of one or more of the following offenses: [o]ral or written publication, in any

manner, of material that slanders or libels a person or organization or disparages a person's or

organization's goods, products or services") (internal numbering omitted.)

Further, Hoefer's defamation allegations would not have occurred *but for* his employment

relationship with GCT.  For instance, Hoefer alleges the following:

> [T]he Defendants' efforts to oust the Plaintiff from GCT included disparagements
> and character assassinations *directed to GCT's employees, attorneys, investors,*
> *partners*, and other individuals.  These defamations were *professionally brutal,*
> falsely alleging that the Plaintiff had *stolen intellectual property*, and that the
> Plaintiff was a liar.  *Evidence that these defamations took place while the Plaintiff*
> *was CEO of GCT* come from Purdue University's Director of Motorsports Danny
> White, who left the Plaintiff a voicemail after talking with Ding in mid-April 2014,
> calling him a con-man. . . . *GCT's intellectual property attorney also told the*
> *Plaintiff that Douglas and Ding had fully informed him of the Plaintiff's 'theft'*
> *through the month of April 2014.*

(*Id.* at 40) (emphasis added).  In addition, Hoefer notes Ding's published response to his state court

lawsuit, in which Ding remarked, "[Hoefer's] lawsuit, which reads as sensationalistic, defamatory,

and error-ridden, demonstrates the same emotional, irrational and dangerous behavior *that led to*

*his necessary separation from the company*."  (Filing No. 80-1 at 309) (emphasis added.)

Further, the Court is not persuaded by Cincinnati's argument that these alleged actions did

not arise out of the employment relationship because Hoefer did not specifically allege that the

named state court Defendants acted pursuant to an official business capacity.  As pled, there can

be no other interpretation of the alleged defamation other than pursuant to the business

relationship.  *Compare Peerless Indem. Ins. Co. v. Moshe & Stimson LLP* ("Peerless"), 22 N.E.3d

882, 886 (Ind. Ct. App. 2014).  Further, Cincinnati has provided no cases to support it pleading-

based argument, which seems to be grounded upon inapplicable government immunity pleading

standards rather than on fact-based contractual ones.

Accordingly, the Court concludes that the unambiguous "Personal and Advertising Injury" provision is triggered to provide coverage for Hoefer's defamation allegations in his Amended Complaint. *See Selective Ins. Co. of S. Carolina.*, 14 N.E.3d at 111 ("[c]lear and unambiguous policy language is given its ordinary meaning").

C.    **"Employment Related Practices" Exclusion**

Nevertheless, although the Court concludes that the Coverage provision is applicable, the Court agrees with Cincinnati that the "Employment Related Practices" exclusion is also applicable, thereby negating Cincinnati's duty to defend or indemnify the named state court Defendants.

In this regard, the Defendants unpersuasively argue that the "Employment Related Practices" exclusion is ambiguous.  The challenged "Employment Related Practices" exclusion provision states, in relevant part, as follows:

**2. Exclusions**

This insurance does not apply to:

. . .

**m.  Employment Related Practices**

"Personal and advertising injury" to:

**(1)**  A person arising out of any:

. . .

**(b)**  Termination of that person's employment; or

**(c)**  Other *employment-related practices, policies, acts or omissions including but not limited to coercion*, *criticism*, *demotion*, evaluation, failure to promote, reassignment, discipline, *defamation*, harassment, *humiliation* or discrimination directed at that person . . .

(Filing No. 1-2 at 22-24) (emphasis added).

As Cincinnati correctly notes, *Peerless Indem. Ins. Co. v. Moshe & Stimson LLP* ("Peerless"), provides clear direction on this issue.  22 N.E.3d 882 (Ind. Ct. App. 2014).  In *Peerless*, a conflict arose between two siblings who were jointly running a private law firm, when

one of the siblings, Sarah Moshe, decided to leave the law firm. *Id*. at 883.  Upon announcement of Sarah's intentions, Sarah's brother, Justin Stimson, refused to dissolve the partnership; seized the firm's assets, including the client files; and refused to pay Sarah her salary. *Id*.  In addition, according to allegations made in a subsequent defamation complaint, Justin began "making accusations about Sarah's personal integrity and her professional competence". *Id*. (internal punctuation omitted). *Id*.  The insurance company, which provided a policy for the siblings' law firm, filed a declaratory action, asserting that an "employment-related practices" exclusion negated the insurance company's responsibility to defend or indemnify the firm or Justin in the dispute. *Id*.

The Indiana Court of Appeals concluded that the exclusion did, indeed, apply, noting that the exclusion was "not ambiguous simply because a controversy exists and Justin's interpretation differs from [the insurance company's]". *Id*. at 886.  In so concluding, the court unequivocally opined that the Sarah's allegations against her brother were "connected to Sarah's employment". *Id*.  In addition, the court noted that "[t]he policy at issue was designed to protect the siblings in suits brought by third parties-it was not meant to protect one against the other in a suit between the two". *Id*.

The factual allegations in Hoefer's Amended Complaint are nearly identical to those in *Peerless*, thereby, requiring a similar conclusion regarding the applicable "Employment Related Practices" exclusion.  In particular, the Court has already concluded that Hoefer's allegations clearly arise out of the employment relationship and would not have occurred but for the relationship.  In addition, the Court agrees with the *Peerless* reasoning that the policy at issue was designed to protect GCT in suits brought by third parties and not suits arising out of internal, business-related disagreements.  *See* 22 N.E.3d at 886.

Further, the Court notes that the cases cited by Defendants either do not apply business related exclusions or do not apply binding Indiana contract law. *See, e.g.*, *Khatib v. Old Dominion Ins. Co.*, 153 So.3d 943 (Fla. Dist. Ct. App. 2014) (applying Florida contract law); *Acuity v. N. Cent. Video, LLLP*, No. 1.05-cv-010, 2007 WL 1356919 (D. N.D. May. 7, 2007) (applying North Dakota contract law); *Peterborough Oil Co. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230 (D. Mass. 2005) (applying Massachusetts contract law); *Grinnell Mut. Reinsurance Co. v. Ault*, 918 N.E.2d 619 (Ind. Ct. App. 2009) (applying a "bodily injury" exclusion); *Barga v. Ind. Farmers Mut. Ins. Grp., Inc*., 687 N.E.2d 57, (Ind. Ct. App. 1997) (applying a "bodily injury" exclusion).

Accordingly, the unambiguous "Employment Related Practice" exclusion is also triggered by Hoefer's defamation allegations in his Amended Complaint. *See Short*, 2013 WL 1828024 at *7 ("[a] policy term is not ambiguous simply because a controversy exists, and one party asserts an interpretation contrary to that asserted by the opposing part"). Therefore, Cincinnati has no duty to defend or indemnify the named state court Defendants in their suit against Hoefer. *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) ("[i]f it is revealed that a claim is clearly excluded under the policy, then no defense is required").

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the applicable insurance policy does not require a defense by Cincinnati. Accordingly, the Court **GRANTS** Cincinnati's motion for partial summary judgment, (Filing No. 81), and **DENIES** the Defendants' motion for partial summary judgment, (Filing No. 74).

Additionally, although the indemnity issue is currently stayed, the issue of indemnity may no longer be viable given this Court's decision on the issue to defend. Because the duty to defend is broader than the duty to indemnity, if there is no duty to defend, there can be no duty to

indemnify. *See, e.g., Jim Barna*, 791 N.E.2d at 823; *Pekin Ins. Co. v. Barber*, No. 1:09-cv-0521-TAB-TWP, 2011 WL 1258063, *3 (S.D. Ind. Mar. 31, 2011).

It appears that the only remaining claim in this case is the Defendant's counterclaim for breach of contract, a claim that appears factually related to the issues addressed in this Entry.  (*See* Filing No. 50 at 28.)  The parties shall **confer and file** a status report within **ten (10) days** of this order, explaining what claims and issues, if any, remain for trial.

**SO ORDERED.**

Date: 8/8/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Douglas H. Fisher
CINCINNATI INSURANCE COMPANY
(LAW OFFICES)
douglas_fisher@staffdefense.com

James J. Hutton
CINCINNATI INSURANCE COMPANY
(LAW OFFICES)
jim_hutton@staffdefense.com

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Charles Russell Cox
COX, SARGEANT & BURNS, P.C.
rcox@coxsargelaw.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN
jemenhiser@psrb.com

Shelley M. Jackson
PLEWS SHADLEY RACHER & BRAUN
sjackson@psrb.com

April C. Tarvin
STAFF COUNSEL OF THE CINCINNATI
INSURANCE COMPANY
april_tarvin@staffdefense.com

David S. Wirth
THE CINCINNATI INSURANCE
COMPANIES
david_wirth@staffdefense.com